IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW C. HEATH-FITZGERALD, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| LELAND DUDEK, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

Case No. CIV-24-260-SPS

## OPINION AND ORDER

The claimant Matthew C. Heath-Fitzgerald, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*.

§ 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

Claimant was born on April 16, 1979, and was 41 years old on the alleged disability onset date. (Tr. 203). He was 45 years old at the time of the most recent administrative hearing conducted on May 2, 2024. (Tr. 1613). He has completed high school and has past relevant work experience working as a restaurant manager, bar manager, small business owner, and information clerk. (Tr. 61, 242, 266, 1732-56). Claimant asserts he has been unable to work since of October 31, 2020. (Tr. 203).

**Procedural History**

The Court has jurisdiction under 42 U.S.C. § 405(g). Claimant applied for disability insurance benefits pursuant to Title II of the Social Security Act in 2021, alleging disability beginning on October 31, 2020. (Tr. 203). *See* 42 U.S.C. §§ 401-33. After early denials (Tr. 105-08, 111-14), he requested a de novo hearing before an ALJ. (Tr. 115-16). An ALJ convened a hearing in November 2022, at which Claimant, with the assistance of non-attorney representative, and a vocational expert, appeared and testified. (Tr. 57-79). On November 28, 2022, an ALJ issued an unfavorable decision. (Tr. 38-51). After the Appeals Council denied Claimant's request for review, (Tr. 1-7, 187-88) Claimant then sought judicial review of the ALJ's November 2022 decision in a complaint filed with the Court in July 2023. (Tr. 1651-54).

In December 2023, on the Commissioner's motion, the Court remanded the ALJ's November 2022 decision for further administrative proceedings. (Tr. 1657-58). In May 2024, the ALJ convened a new hearing, at which Claimant, with the assistance of his representative, and a vocational expert, again appeared and testified. (Tr. 1613-24). On May 15, 2024, the ALJ issued a decision in which he found Claimant not disabled from the alleged onset date through the

December 31, 2021, date last insured. (Tr. 1591-1606). The ALJ's May 2024 decision became the final decision for purposes of this Court's review on July 15, 2024. *See* 20 C.F.R. § 404.984.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had severe impairments including diabetes mellitus type I and Grave's disease. (Tr. 1597). The ALJ assessed Claimant suffered from some nonsevere impairments, including hypertension, tachycardia, mixed hyperlipidemia, neuropathy, restless leg syndrome, irritable bowel syndrome, GERD without esophagitis, gastritis, dental caries, migraine headaches, status post cannabinoid hyperemesis syndrome, and adjustment disorder with mixed anxiety and depressed mood. (Tr. 1597).

Next, he found that Claimant's impairments did not meet a listing. (Tr. 1599). At step four, he found that Claimant retained "the residual functional capacity ("RFC") to perform medium as defined in 20 C.F.R. § 404.1567(c) with avoidance of concentrated exposure to temperature extremes (Tr. 1599), which allowed Claimant to perform his past relevant work as a restaurant manager, bar manager, and small business owner. (Tr. 1604-05). Alternatively, the ALJ proceeded to step five, and found that, through the date last insured, Claimant could also perform other work existing in significant numbers in the national economy, including the jobs of laundry worker, machine packager, change-house attendant, cashier II, fund raiser II, and routing clerk. (Tr. 1605-06). The ALJ thus concluded that Claimant was not disabled under the Act. (Tr. 1606).

## Review

The relevant evidence before the ALJ reflects that at the time of his alleged disability onset date, Claimant was following up with primary care for management of his chronic medical conditions with routine, conservative prescription medication treatment. (Tr. 739-851). On

December 9, 2020, he presented to a walk-in clinic and was prescribed antibiotics for a dental abscess. (Tr. 431). On December 14, 2020, primary care follow-up, Claimant was continued on his antibiotics and told to follow up with a dentist as soon as possible. The primary care provider adjusted his insulin. (Tr. 797). While he alleged diarrhea and was noted to have a past medical history of IBS, he denied having any diarrhea. (Tr. 794). He was within normal limits on examination, (Tr. 795-796), except for dental caries. (Tr. 795). On March 15, 2021, he denied blurred vision, burning of the extremities, diarrhea, and heartburn, even when being out of Lantus insulin for one week. (Tr. 779).

On July 26, 2021, Claimant established care with endocrinologist Dr. Curtis Harris, M.D., who continued his insulin, advised better glucose monitoring, and advised as to better insulin usage. (Tr. 865). After this appointment, Dr. Harris diagnosed Graves' disease. On August 30, 2021, Claimant had a follow-up appointment. He stated that he had been started on Tapazole one week prior, along with a beta blocker that his primary care provider prescribed. Claimant reported that he was feeling better and, his symptoms of fatigue and anxiety were relieved. (Tr. 862).

On November 3, 2021, Claimant complained of some hypoglycemic episodes to Dr. Harris. Dr. Harris decreased his Lantus dose, noting that Claimant's insulin sensitivity, and Graaves' disease were improving. (Tr. 854).

Claimant alleged that he required multiple hospitalizations related to his diabetes. On November 1, 2020, he presented to the emergency room with complaints of nausea and vomiting with an onset of about five hours earlier. He was worried about diabetic ketoacidosis, (Tr. 555), but it was ruled out and he was not hospitalized. (Tr. 552). He presented again with the same complaints on January 23, 2021, (Tr. 537), but was, again, not hospitalized. (Tr. 541). The following day, however, he was admitted to the ICU for treatment of diabetic ketoacidosis. (Tr.

536). He was discharged the next day after the condition resolved. It was noted that he ate erratically and did not do carb counting. (Tr. 524).

On April 6, 2021, he again presented to the emergency room for complaints of nausea and vomiting. (Tr. 490). He was not found to be in diabetic ketoacidosis. (Tr. 492). He presented again the next day. He was told that if an upper endoscopy found no cause, or medication did not help, his nausea and vomiting were likely due to marijuana usage. (Tr. 489). On April 8, 2021, he was placed in observation for intractable nausea and vomiting. His symptoms and treatments were found to be consistent with cannabinoid hyperemesis syndrome. (Tr. 466).

On December 28, 2021, he presented again to the emergency room with complaints of nausea and vomiting that began the prior day. (Tr. 1189). On examination, he was in moderate acute distress, and he was tachycardic and tachypneic. (Tr. 1191). He was in diabetic ketoacidosis, (Tr. 1192), but this quickly corrected with intravenous fluids and temporary insulin drop. His nausea and vomiting took an additional 24 hours to control, and he was again found to have hyperemesis syndrome secondary to cannabis use. (Tr. 1197).

Claimant's own medical source, primary care provider Jennifer Brewer, ARPN-CNP, completed a series of three opinion forms. In the first form, she said Claimant would be absent from work about three or more days per month due to uncontrolled type I diabetes. (Tr. 725). She said Claimant had no pain present in significant degree or increase of pain, no reduction in basic mental work activities whatsoever due to pain, and some limitations due to pain, but not to such a degree as to create a serious problem in most instances. (Tr. 726). In the second form, Ms. Brewer said Claimant could understand, remember, and carry out simple instructions, make simple work-related decisions, respond appropriately to supervisors and coworkers, respond to work situations, deal with changes, maintain concentration and attention for extended periods, and handle normal

work stress in a routine work setting. (Tr. 727). In the third form, Ms. Brewer said Claimant rarely had pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple tasks. (Tr. 730). She said Claimant could tolerate "moderate" stress and could walk four city blocks without rest or severe pain. (Tr. 730).

In October 2021, Ms. Brewer completed a fourth form, wherein she stated that Claimant's symptoms would interfere with attention and concentration frequently. (Tr. 736). She said Claimant could tolerate varying degrees of work stress. (Tr. 736). She also said Claimant could only walk four city block and sit for more than two hours and stand for two hours each at one time. (Tr. 736). She said he could sit and stand/walk for less than two hours each in an eight-hour workday and had to walk every 20 minutes for six minutes, as well as shift positions from sitting, standing, and walking. (Tr. 736). She said he needed unscheduled breaks four to six times a day. (Tr. 737). She also said he could occasionally lift and carry 20 pounds and rarely lift and carry 10 pounds. (Tr. 737). She further said he had some environmental restrictions and would be absent from work about four days per month. (Tr. 738).

On September 17, 2021, Claimant had a follow-up with endocrinologist Dr. Harris. He again reported that he felt that his symptoms had improved with Tapazole and beta blocker. (Tr. 859). Dr. Harris increased Claimant's insulin, (Tr. 680), as Claimant had reported that his morning finger stick blood sugars were in the mid-to-lower 200 mg/dL range. Claimant reported nausea and diarrhea but stated that such had only been ongoing for "several days," not chronically. *Id*.

On February 15, 2022, Harold DeLaughter, D.O., conducted an internal medicine consultative evaluation. It was noted Claimant's range of motion was within normal limits throughout. The range of motion of the spine was normal. His straight leg raise test was negative bilaterally. Claimant's manual dexterity examination was unremarkable with 5/5 grip strength

bilaterally and normal fine tactile manipulation of objects. He ambulated with a stable gait at a normal speed without use of assistive devices. His toe and heel walking were normal bilaterally. His mental status was unremarkable. Claimant reported that his medical marijuana card had expired, but he continued to use marijuana as recently as a week earlier. He had a history of cannabinoid hyperemesis syndrome.

On September 28, 2022, almost a year after the date last insured, Claimant underwent an independent medical examination conducted by Dr. John W. Ellis, M.D. He stated that about a year-and-a-half prior, he began having difficulty with coldness and warmth and was ultimately diagnosed with Graves' disease. He also complained of symptoms after he contracted COVID in January 2022. (Tr. 1580-1582). Dr. Ellis opined that Claimant could perform "light" work, but that his experience of pain, fatigue, or other symptoms would constantly be severe enough to interfere with attention and concentration and he would need to take an unscheduled one hour break every two hours and would be absent from work more than three times weekly. He must avoid temperature extremes. (Tr. 1580-1590).

Claimant asserts the ALJ failed to apply the correct legal standards when assessing the medical opinions and failed to properly analyze the subjective statements in the record pursuant to SSR-16-3p. (Doc. 11 at 4). The Court finds the decision of the ALJ is consistent with the evidence.

In the instant case, the ALJ determined that Claimant has the RFC to perform medium work with restrictions. (Tr. 1599). The RFC is the most Claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1545, 20 C.F.R. §416.945. The RFC should not include those activities that Claimant can do sporadically; instead, it can only include what he can sustain for eight hours a day, five days a week. Social Security Ruling 96-8p. The ALJ is required to consider all Claimant's medically determinable impairments, singly and in

combination; the statute and regulations allow nothing less and a failure to do so is reversible error. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir 2006). The ALJ may not ignore evidence that does not support his decision, especially when that evidence is significantly probative. *Biggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001). Furthermore, the ALJ must support his conclusions with specific references to the evidence in the record and interpret that evidence fairly. *Winfrey v. Chater,* 92 F.3d 1017, 1024 (10th Cir. 1996) (the ALJ erred by failing to relate his conclusions to the evidence).

Likewise, *SSR* 16-3p states that when considering an individual's subjective statements, the ALJ considers first, whether an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms even exists, and then second, whether the objective medical evidence is consistent with the individual's statements. When evaluating severity, the ALJ must address the objective medical *and other* evidence regarding the intensity, persistence, and limiting effects of the claimant's symptoms. *See Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008). This includes the factors as outlined in *SSR* 16-3p, such as an individual's repeated attempts to find relief from pain, the drugs prescribed for pain, the side effects from pain medication, the effectiveness of the pain medication, and how an individual's activities of daily living have been affected by her pain. *Id.*

At the November 17, 2022, hearing, Claimant testified he could not work, because his blood sugars get abnormally high. He takes insulin and checks his blood sugars five to six times daily. They were running in the 200 mg/dL range. He also testified he had general exhaustion given that his blood sugars were much higher than they should have been. He said he has Graves' disease, which also brought on a lot of stomach issues. It kept him from getting far from the bathroom. They increased his medications twice since his Graves' diagnosis. He put on 30 pounds

due to this thyroid disease. He had to use the restroom as often as five to six times per day. He did not wear adult garments, but he had accidents where he had to change clothes. He also had depression. (Tr. 57-79).

At the May 2, 2024, hearing, he testified that during the period at issue, he had several overnight stays in the hospital due to sickness related to his diabetes. (Tr. 1600). The ALJ acknowledged Claimant's subjective complaints, including general exhaustion, stomach issues, and depression (Tr. 1600) but found that Claimant's reported symptoms were inconsistent with the objective evidence and his conservative treatment. (Tr. 1600-1604). This finding is due "particular deference" by the Court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). As the ALJ found, the objective medical evidence contradicted Claimant's subjective complaints (Tr. 1601). This included the findings of Ms. Brewer and Drs. Harris and DeLaughter. (Tr. 524, 729, 774, 779, 794, 797, 854-55, 859-60, 862-63, 1058-92, 1197). 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing subjective complaints, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence").

The ALJ next noted that evidence of noncompliance detracted from Claimant's subjective complaints. (Tr. 1601). For example, Claimant reported that he ate only erratically and did not do carb counting (Tr. 524). *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence); *Huston*, 838 F.2d at 1132 (in assessing subjective complaints, an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief"). As the ALJ further found, evidence that medications improved Claimant's symptoms detracted from his subjective complaints (Tr. 1601). As discussed *supra*, several medical records showed Claimant's impairments responded to medication or other treatment (Tr. 524, 779, 794, 854-55,

859-60, 862-63, 1197). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (stating an ALJ must consider the effectiveness of treatment); *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (fact that impairment was well-controlled supported ALJ's conclusion the claimant was not disabled).

Further, the ALJ noted, Claimant's activities of daily living also detracted from Claimant's subjective complaints (Tr. 1598). For example, in October and May 2021, Claimant said he went out five times a month, i.e., to breakfast with friends weekly (Tr. 236, 288, 298). *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating an ALJ must consider a claimant's activities); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably found a claimant's description of her daily activities did not indicate significant limitations, where she could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat). Finally, the ALJ found evidence that Claimant worked during the period at issue supported a finding that his subjective complaints lacked consistency with the medical and other evidence (Tr. 1597).

At the November 2022 hearing, Claimant testified he worked part-time under a contract with the Oklahoma State Department of Health, although he said he only worked approximately eight hours per week (Tr. 61). 42 U.S.C. § 423(d)(2)(A)(a claimant is not disabled unless "he is not only unable to do his previous work but [also] cannot. . . engage in any other kind of substantial gainful work"); 20 C.F.R. § 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (evidence a claimant did mechanic work even after the alleged onset of disability supported a finding of non-disability). The ALJ, therefore, reasonably found that Claimant's allegations and testimony were not entirely consistent with the medical source reports, objective examination findings, and other statements he made through the date last insured.

Regarding the objective medical evidence, the ALJ found the medical record failed to substantiate Claimant's allegations as to the frequency of diarrhea, (Tr. 779, 794, 859), and his nausea and vomiting were found to be due to cannabis usage. (Tr. 466, 1197). The ALJ found Nurse Brewer's opinion inconsistent with the unremarkable, within normal limits findings on the February 15, 2022, consultative physical examination, soon after the date last insured. (Tr. 1058-1064). Discussing Dr. Ellis's opinion, the ALJ found it only marginally persuasive. He found the aspect of Dr. Ellis's opinion that Claimant must avoid temperature extremes due to Graves' disease to be reasonable. However, he found the remainder of his opinion lacking in support. "Dr. Ellis cited to the claimant's statements of symptoms due, in part, to his COVID and his Graves' disease, but, as far as medical findings, recorded no examination findings other than vital signs. Dr. Ellis also cited to the "3.8 cm stack" of medical records that he reviewed, though he cited to none of the evidence comprising these records." (Tr. 1582). The ALJ found endocrinologist Dr. Harris's notes reflected Claimant reported improving, rather than worsening, symptoms after starting medication for his Graves' disease, and the largely unremarkable clinical examination findings through the date last insured also belied Dr. Ellis's statements as to purported weakness due to Graves' disease. Finally, the ALJ asked Claimant at the November 17, 2022, hearing whether he felt he could have performed his contract work for the State of Oklahoma on a full-time basis. Claimant answered that he would be unable to due to concentration and comprehension problems, which he alleges began after he contracted COVID. However, Claimant further testified that he contracted COVID in January 2022, meaning that said alleged problems did not exist through the date last insured and, thus, would not have affected his ability to perform the contract work on a full-time basis.

Therefore, the Court finds the ALJ supported his conclusions, citing to objective medical evidence, conservative treatment, efficacy of medication, and the conflicts between Claimant's

testimony and the medical evidence and accounted for all of Claimant's reported symptoms in the RFC that were supported by the record.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. Accordingly, the Court finds the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERD this 16th day of April, 2025.**

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**